**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARBARA SKAGGS, as Guardian of
the Person and the Estate of Roy
Skaggs, an incapacitated person,

      Plaintiff-Appellant,

v.

OTIS ELEVATOR COMPANY, a New
Jersey corporation,

      Defendant-Appellee.

No. 97-5213

---

Appeal from the United States District Court
for the N. District of Oklahoma
(D.C. No. 96-CV-605)

---

Anthony M. Laizure, of Stipe Law Firm, Tulsa, Oklahoma, for Appellant.

Robert E. Manchester, of Manchester & Pignato, P.C., (Shannon K. Emmons and
Stacey Haws Felkner, of Manchester & Pignato, P.C., with him on the brief),
Oklahoma City, Oklahoma, for Appellee.

---

Before **BRORBY, MURPHY,** Circuit Judges, **MARTEN,** * District Judge.

---

*Honorable J. Thomas Marten, United States District Judge, U. S. District
Court for the District of Kansas, sitting by designation.

**MURPHY**, Circuit Judge.

Barbara Skaggs ("Skaggs"), individually and as guardian of the person and estate of Roy Skaggs, was the plaintiff[1] in an civil lawsuit filed against defendant, Otis Elevator Company ("Otis"). After a four day jury trial, a verdict was entered for Otis. Skaggs filed a motion for a new trial after discovering that a member of the jury had given an incorrect response during voir dire questioning. The district court held an evidentiary hearing and found that the juror's response had been intentionally incorrect but that a correct response by the juror would not have provided Skaggs with a basis to challenge him for cause. The district court also held that Skaggs had failed to show either actual or implied bias on the part of the juror and denied the motion. Skaggs appeals the district court's denial of the motion for a new trial and argues that the juror's intentionally dishonest answers during voir dire and during the post-trial hearing demonstrate that he was biased. This court has jurisdiction over this appeal from a final judgment pursuant to 28

---

[1]Roy Skaggs was originally named as plaintiff in the lawsuit. Sometime after the lawsuit was filed, Roy Skaggs' wife, Barbara Skaggs, was substituted as plaintiff, both individually and in her capacity as guardian of the person and the estate of Roy Skaggs. Any reference hereinafter to "Skaggs" is to Barbara Skaggs, the substituted plaintiff.

U.S.C. § 1291.  After examining the briefs of the parties and the record, this court **AFFIRMS**.

I.    FACTUAL BACKGROUND

On January 5, 1995, Roy Skaggs was working on a construction site in the proximity of an elevator manufactured by defendant-appellee, Otis Elevator Company.  Mr. Skaggs was injured when he was thrown against the elevator as it descended the elevator hoistway.  Mr. Skaggs claimed he suffered serious and permanent injuries and that these injuries were the result of Otis' negligence.  A four-day trial resulted in a jury verdict in favor of Otis.

Subsequent to the jury verdict,  Skaggs discovered that the foreperson of the jury, Douglas Van Zandt, had been a named party in several lawsuits.  During voir dire, the district court had directed the following question to the venire: "Have any of you-all, or members of your immediate family, ever participated in a lawsuit, either as a party or in some other capacity such as a witness?"  No member of the panel, including Mr. Van Zandt, responded.  Skaggs filed a motion for a new trial on the grounds that Van Zandt's failure to respond to the court's question during voir dire denied her a fair trial by an impartial jury.  In the alternative, Skaggs requested an evidentiary hearing to probe the matters raised in the motion for a new trial.

The district court conducted the requested hearing and juror Van Zandt was questioned by the parties and by the court. At the hearing, Mr. Van Zandt admitted being involved in at least nine lawsuits. He admitted to filing bankruptcy and to being named as a defendant in several suits involving his nonpayment of financial obligations to third parties. Mr. Van Zandt also acknowledged that he had been divorced prior to 1985 and admitted that he had been charged with a felony for writing a "bogus" check in 1988.

During the hearing, Mr. Van Zandt was asked to explain why he had not responded affirmatively to the district court's question regarding his prior participation in lawsuits. He offered the following explanation: "I didn't understand [the question] as it pertained to me . . . ." When pressed by Skaggs' attorney, Van Zandt expanded on his explanation by stating that he believed the court, in posing the question, was searching for information on whether prospective jurors had been involved in lawsuits either similar to the one brought by Skaggs or involving significant damages, not lawsuits involving "my personal financial problems." Based on the evidence presented at the hearing, the district court found that Mr. Van Zandt had been intentionally dishonest when he failed to disclose his participation in the lawsuits. The court also found that the explanation given by Van Zandt for his silence during voir dire lacked credibility, stating: "I'm not prepared to credit in any shape, manner or form the explanation

proffered on the stand." The court, however, held that Skaggs had failed to show Van Zandt was actually or impliedly biased against her and denied Skaggs' motion for a new trial. This appeal followed.

## II.    STANDARD OF REVIEW

A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. *See Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996). The ruling will be reversed only if the district court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id*. When the district court's decision turns on an issue of law, however, its determination on that question is reviewed *de novo*. *See id.*

## III.    ANALYSIS

The Seventh Amendment to the United States Constitution guarantees a litigant in a civil proceeding the right to a trial by jury. *See* U.S. Const. amend VII. Although the Seventh Amendment does not contain language identical to that found in the Sixth Amendment, which specifically guarantees a criminal defendant the right to an "impartial jury," the right to a jury trial in a civil case would be illusory unless it encompassed the right to an impartial jury.[2] "This

---

[2]We recognize that most of the reported cases addressing the issue of juror bias involve criminal defendants and, therefore, the right to an "impartial jury" guaranteed by the Sixth Amendment. Although the issue in this appeal is governed by the Seventh Amendment, the reasoning of the Sixth Amendment cases concerning juror bias is germane to the analysis of the issue raised by

right [to an impartial jury] is neither enlarged nor diminished by the Fifth Amendment provision that a person shall not 'be deprived of life, liberty, or property, without due process of law.' [The] denial of trial by an impartial jury is also the denial of due process . . . ." *Casias v. United States*, 315 F.2d 614, 615 (10th Cir. 1963) (en banc).

It is a well-settled principle that a litigant is entitled to a fair trial, albeit not a perfect one. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). An impartial jury is an essential element of a litigant's right to a fair trial. *See id*. at 554. The examination of prospective jurors during voir dire is intended to expose possible juror biases and is employed to insure that jurors are impartial. *See id*. Not all juror biases, however, adversely affect a litigant's right to a fair trial. To violate due process, the bias must affect the juror's ability to impartially consider the evidence presented at trial. *See Smith v. Phillips*, 455 U.S. 209, 217 (1982).

A. *The McDonough Test*

The Supreme Court has articulated a two-prong test to be applied to determine whether a litigant is entitled to a new trial in the face of allegations that a juror's voir dire responses were untruthful. "[T]o obtain a new trial in such

_____

Skaggs herein. Additionally, *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), discussed at length *infra*, involved civil litigants and not a criminal defendant.

-6-

a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556.

The first prong of the *McDonough* test is satisfied if the movant can prove that the juror in question intentionally gave an incorrect answer. *See Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996) (applying the *McDonough* test in a criminal case), *cert. denied*, 117 S. Ct. 1342 (1997). Additionally, the answer must have been in response to a material question. *See id*. A juror's honesty during voir dire is a factual determination reviewed for clear error. *See id*. at 985. The second prong of the *McDonough* test is met only if the movant can satisfactorily show the juror's correct response to the material question would have provided the movant with a valid basis to challenge the juror for cause. *See id*. at 984.

In this case, the district court held an evidentiary hearing during which the juror in question, Mr. Van Zandt, was questioned by the parties and by the court. After the hearing, the district court stated: "The Court finds that indeed this was a material question, and I can assure you that the Court finds that [Van Zandt] failed to answer it honestly." Nothing in the record indicates this finding is clearly erroneous. The record contains evidence that Mr. Van Zandt was

-7-

educated and experienced in business and had the ability to understand the question posed by the district court. The wording of the question was straight-forward and unambiguous. Additionally, Mr. Van Zandt had been involved in not one, but at least nine lawsuits, a fact which would be difficult for most individuals to forget or overlook. The evidence in the record is more than ample to support the district court's finding that Van Zandt gave an intentionally dishonest answer to a material question posed during voir dire questioning. Therefore, the first prong of *McDonough* is satisfied.

The district court next concluded that if Van Zandt had disclosed his participation in the lawsuits, he would not have been excused for cause during voir dire questioning. Skaggs conceded during oral argument in this appeal that Van Zandt's participation in the nine lawsuits would not have provided grounds for a challenge for cause. By her own admission, Skaggs has therefore failed to satisfy the second prong of the *McDonough* test. Correspondingly, the district court did not abuse its discretion in denying Skaggs' motion for a new trial on her *McDonough* claim.

B. *Actual or Implied Bias*

Before the *McDonough* test was adopted by the Supreme Court, litigants alleging juror impartiality had the opportunity to prove actual or implied bias on the part of a juror after a verdict was entered. *See*, *e.g.*, *Williams v. United*

*States* , 418 F.2d 372, 377 (10th Cir. 1969).  The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."        *Smith,*  455 U.S. at  215.

Inability to satisfy the    *McDonough*  test does not always preclude a litigant from presenting evidence of a juror's actual or implied bias.        *See Gonzales*  , 99 F.3d at 985-86 ("Cases such as this one -- based on allegations of dishonest voir dire answers -- fall within a larger category that comprises all cases of alleged juror partiality, whatever the source of partiality.").        *McDonough*  merely provides a party who alleges juror dishonesty during voir dire with an additional vehicle to obtain a new trial by demonstrating juror bias.  The advent of the test did not eliminate a litigant's broader historic right to prove actual or implied juror bias. *See id.*  at 985-86 .

Although unable to prove a juror's incorrect response to a material question was intentional, a movant may introduce evidence demonstrating bias on the part of a juror who gave an incorrect but not intentionally dishonest answer during voir dire.  *See* , *e.g.* , *id*. at 985-91;   *see also  United States v. Lawhorne*   , No. CR. 3:96CR139, 1998 WL 833853, at *18 (E.D. Va. 1998) (holding that a juror who unintentionally gave an incorrect answer during voir dire was nevertheless actually biased in favor of the prosecution).  Consonantly, as in this case, a movant may be unable to prove that a juror's intentionally incorrect

answer to a material question would have provided a basis for challenge for cause. The movant who fails to prove the second prong of the *McDonough* test has necessarily failed to prove that the juror's actual or implied bias could have been established from the juror's correct response. Nevertheless, evidence of the juror's motive for intentionally providing an incorrect answer, or evidence of additional circumstances occurring outside the voir dire process, may demonstrate the juror's bias. In such unusual situations, a litigant should not be foreclosed from introducing evidence to demonstrate that the juror was biased and that the bias affected the litigant's right to a fair trial.

A litigant who makes a general claim of juror bias may be entitled to a hearing at which she has the opportunity to prove the alleged bias. *See Burton v. Johnson*, 948 F.2d 1150, 1156 (10th Cir. 1991). "[I]t remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred." *McDonough*, 464 U.S. at 556-57 (Blackmun, J., concurring). The moving party bears the burden of establishing juror bias. *See Wainwright v. Witt*, 469 U.S. 412, 423 (1985).

Actual bias is a factual finding reviewed for clear error. *See Gonzales*, 99 F.3d at 986. Actual bias can be shown by the express admission of the juror.[3] *See*, *e.g.*, *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992). A finding of actual bias is "based upon express proof, e.g., . . . admission by the prospective juror of a state of mind prejudicial to a party's interest." *United States v. Haynes*, 398 F.2d 980, 984 (2d. Cir. 1968).

The determination of implied bias is a question of law reviewed *de novo*. *See Burton*, 948 F.2d at 1158. Implied bias can be proved by showing that the juror had a "personal connection to the parties or circumstances of the trial." *Gonzales*, 99 F.3d at 987. These types of situations include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close

---

[3]It appears that some confusion has crept into the definition of the term "actual bias." In a line of cases, this court has stated that "[a]ctual bias may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed." *Baca v. Sullivan*, 821 F.2d 1480, 1483 (10th Cir. 1987); *see also Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1514 (10th Cir. 1997); *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994); *Burton v. Johnson*, 948 F.2d 1150, 1159 n.10 (10th Cir. 1991). This definition of actual bias more accurately includes both actual bias (i.e., a question of fact which may be proved by a juror's express admission), and implied bias (i.e., a question of law proved by facts which show such a close connection between the juror's experiences and the facts at trial that bias can be presumed as a matter of law). *See*, *e.g.*, *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992); *United States v. Wood*, 299 U.S. 123, 133 (1936) ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law.").

relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith*, 455 U.S. at 222 (O'Connor, J., concurring) (discussing implied bias in a criminal case). Implied bias can also be found when there are similarities between the personal experiences of the juror and the issues being litigated. *See Gonzales*, 99 F.3d at 987 . "[I]mplied bias may be found even though a juror denies any partiality." *Id*. A juror's dishonesty during voir dire is one factor to be considered when determining whether the juror was impliedly biased. *See id*. at 989.

In addition to her *McDonough* claim, Skaggs asserts a general claim of juror bias based upon juror Van Zandt's dishonesty. The premise of Skaggs' argument is that the only reasonable explanation for Van Zandt's dishonesty is that he was biased against Skaggs and lied to insure that he would be seated on the jury and influence the outcome of the civil trial. The district court ordered a post-trial hearing to address Skaggs' claim of juror bias. Skaggs was given the opportunity to question Van Zandt and attempt to uncover the reason for his intentionally incorrect answer.

During the post-trial hearing, Van Zandt never expressly admitted that he was biased against Skaggs. To the contrary, Van Zandt emphatically and repeatedly denied any bias against Skaggs. During questioning by Skaggs'

attorney he responded: "And I can also tell you that in no way possible did this bias me in any way with my decision or that jury's decision." When questioned by the court, Van Zandt replied: "I did not bring any point of view to this proceeding as a result of anything that had happened to me in the past, sir." During the hearing, Skaggs was unable to elicit from Van Zandt an admission of his bias against Skaggs. Although the district court did find that Van Zandt's explanation of why he failed to disclose his participation in lawsuits was not credible, it did not specifically find that his assertion that he was not biased lacked credibility. "'[T]he district court is in the best position to observe the juror and to make a first-hand evaluation of his ability to be fair.'" *Vasey v. Martin Marietta Corp*., 29 F.3d 1460, 1467 (10th Cir. 1994) (quoting *Wilson v. Johns-Manville Sales Corp.*, 810 F.2d 1358, 1361 (5th Cir. 1987)). Accordingly, the district court's finding that Skaggs failed to prove actual bias on the part of Van Zandt was not clearly erroneous.

Although she has failed to demonstrate actual bias, Skaggs advocates that Van Zandt's bias against her should be implied from either the fact that he gave an intentionally dishonest answer during voir dire or from the fact that he lied again during the post-trial hearing.

To adopt Skaggs' argument that Van Zandt's bias can be implied solely from his dishonest response during voir dire would require this court to hold that

any time the first prong of the *McDonough* test is satisfied, the juror is biased as a matter of law. Such a ruling would inexorably eradicate the second prong of the *McDonough* test. It would reduce the *McDonough* inquiry to the sole question of whether the juror's response was honest or dishonest. *See Gonzales*, 99 F.3d at 989 (a juror's dishonesty during voir dire is just one factor to be considered when evaluating a claim of implied bias). While Skaggs may have been unable to uncover the true reason Van Zandt gave an intentionally dishonest answer during voir dire, Skaggs offered no evidence during the post-trial hearing from which this court could conclude that Van Zandt's reason for remaining silent during voir dire was to ensure himself a seat on the jury. An equally plausible explanation for Van Zandt's silence may be his embarrassment to admit before the court and the venire that he had experienced financial difficulties and consequent litigation.

The district court's finding that Van Zandt's explanation for his silence during voir dire lacked credibility is not clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). Skaggs has not shown, however, that Van Zandt's subsequent dishonesty during the post-trial hearing demonstrates that he was biased against Skaggs. At the post-trial hearing, Van Zandt may have fabricated an explanation for his silence during voir dire because he was embarrassed that his previous lie had been uncovered.

-14-

Whatever the reason for Van Zandt's dishonesty, the record does not establish that he responded dishonestly during voir dire and again during the post-trial hearing because he had an implied bias against Skaggs. In the absence of any other evidence establishing Van Zandt's implied bias, we are unwilling to hold that Van Zandt's pervasive dishonestly establishes, as a matter of law, that he harbored an implied bias against Skaggs.

IV.  CONCLUSION

The district court's finding that Skaggs failed to show actual bias was not clearly erroneous. Additionally, we hold that, as a matter of law, Skaggs has not shown implied juror bias. Accordingly, the district court did not abuse its discretion when it denied Skaggs' motion for a new trial on her general claim of juror bias.

The judgment of the district court is    **AFFIRMED.**

-15-